## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
## GREEN BAY DIVISION

ELI LILLY AND COMPANY and
ELANCO US INC.,

      Plaintiffs,

      v.                                     Case No. 1:17-cv-703

ARLA FOODS, INC. d/b/a
ARLA FOODS INC., USA and
ARLA FOODS PRODUCTION LLC,

      Defendants.

## FIRST AMENDED COMPLAINT

Plaintiffs Eli Lilly and Company ("Lilly") and Elanco US Inc. (together "Elanco")
file this First Amended Complaint to correct the legal name of defendant Arla Foods, Inc. and
allege the following against defendants Arla Foods, Inc., doing business as Arla Foods Inc., USA
and Arla Foods Production LLC (collectively, "Arla"):

### <u>NATURE OF ACTION</u>

1.      This is an action for false advertising and unfair business practices in
violation of federal and Wisconsin law.

2.      Arla is an international dairy conglomerate that produces and sells Arla®
brand cheeses in this District and throughout the United States.  Within the last few weeks, Arla
launched a $30 million, multi-media advertising campaign that is built upon a fundamental
deception.  In numerous ads that are currently being disseminated in this District and nationwide,
Arla is claiming that its cheeses are safer than others because Arla does not use milk from cows
that receive rBST, a supplement that Elanco produces and sells under the brand name Posilac®.

Posilac is a recombinant DNA-derived version of bovine somatotropin or "BST," a hormone that occurs naturally in all cows and that helps regulate the production of milk.

3.     Arla's assault on rBST's safety is anything but subtle.  In the 30-second television commercial that is the centerpiece of the campaign, Arla depicts rBST as an enormous, six-eyed monster with "razor-sharp horns" and "electrified" fur.  Arla reinforces the core message that rBST is "dangerous" through an extensive, internet-based social media campaign that amplifies and repeats the commercial's key images and messages.

4.     Arla's claims that rBST is dangerous and unsafe are false.  Following multiple, extensive reviews of the scientific evidence, the U.S. Food and Drug Administration ("FDA") has determined that rBST is safe, and that there is no discernable difference between milk from cows supplemented with rBST and milk from unsupplemented cows.  Indeed, FDA and the State of Wisconsin have expressly determined that any advertisement that portrays a dairy product made from milk of cows that have received rBST supplements as unsafe or compositionally different from other dairy products is false and misleading.  Arla's ads ignore these proscriptions and, in doing so, violate both federal and state truth-in-advertising laws.

5.     Arla's false advertising is causing irreparable harm to Elanco.  Posilac is the only rBST product approved for sale in the United States and is associated exclusively with Elanco.  An attack on the safety of "rBST" is thus an attack on Elanco.  Arla's false safety claims are inflicting, and (unless promptly curtailed) will continue to inflict, harm to Elanco and its business that cannot be readily quantified or remedied through money damages alone.

6.     Elanco brings this action to stop Arla from further deceiving the public about the safety and quality of dairy products made with milk from cows supplemented with

rBST, to protect Elanco's goodwill, and to recover damages for losses suffered as a result of Arla's false advertising to date.

**PARTIES**

7.  Lilly, through its Elanco Animal Health division, and Elanco US Inc., a wholly owned subsidiary of Lilly, develop and market products to improve animal health and food animal production in the United States and throughout the world. Lilly is an Indiana corporation with its principal place of business in Indianapolis, Indiana. Lilly's Elanco Animal Health division is headquartered in Greenfield, Indiana. Elanco US Inc. is a Delaware corporation with headquarters in Greenfield, Indiana.

8.  Arla Foods is a global dairy conglomerate based in Denmark. Upon information and belief, Arla Foods is the world's fourth largest dairy company with annual revenues in excess of $10 billion.

9.  Upon information and belief, Arla's principal U.S. subsidiary, Defendant Arla Foods, Inc., conducts business and presents itself to the world using the fictitious business name, Arla Foods Inc., USA. Upon information and belief, Arla Foods, Inc. is a New Jersey corporation that conducts substantial business in this District. Upon information and belief, Arla Foods, Inc. produces cheese for the U.S. market at its dairy in Kaukauna, Wisconsin.

10.  Upon information and belief, Arla Foods, Inc. produces cheese in concert with Defendant Arla Foods Production LLC, which is a Wisconsin limited liability company with an office in Kaukauna, Wisconsin.

**JURISDICTION AND VENUE**

11.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the complaint involves a federal question under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B). This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332

3

because there is diversity between the parties and more than $75,000 in dispute. The Court further has supplemental jurisdiction over the state law claims.

12.     This Court has personal jurisdiction over Arla because Arla regularly and systematically transacts business in Wisconsin, including at and through its dairy in Kaukauna, Wisconsin. This Court also has personal jurisdiction over Arla because acts that form the basis of the claims asserted herein were committed in Wisconsin. Arla's press release that accompanied the launch of its false advertising campaign touts the fact that Arla's cheese is "all produced at the Hollandtown Dairy in Kaukauna, Wis." The product labels for Arla's cheeses, which feature unlawful rBST-related claims, prominently display a "Wisconsin Cheese" seal and list Arla's Wisconsin business address.

13.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## FACTS

14.     Bovine somatotropin, or BST, is a hormone naturally produced in the pituitary glands of cattle. BST works by coordinating cows' metabolism so that nutrients are funneled toward the production of milk.

15.     BST is naturally present in all milk and dairy products at very low levels.

16.     Recombinant bovine somatotropin (rBST) is a BST supplement marketed and sold in the United States by Elanco under the brand name Posilac. rBST is a recombinant DNA-derived version of BST that is virtually identical to naturally occurring or endogenous BST, and that helps promote milk production.

17.     On November 5, 1993, after exhaustive review of the scientific evidence concerning the composition and safety of dairy products made with milk from cows

4

supplemented with rBST, FDA determined that Posilac is safe and effective, and approved its sale and use in the United States.

18.     Posilac is the first and only BST supplement or rBST product approved by FDA. As a result, the term "rBST," when used in U.S. commerce, is synonymous with Elanco's Posilac supplement.

**rBST Is Safe, and Advertising to the Contrary Is Unlawful**

19.     rBST is safe for humans and cows.

20.     As noted above, BST is naturally present in milk and dairy products at very low levels. The same is true of rBST in milk and dairy products from cows supplemented with Posilac. BST and rBST in milk and dairy products are indistinguishable from one another.

21.     rBST has no biological activity in, and poses no safety risk to, humans. Dairy products are typically pasteurized, and pasteurization renders virtually all BST and rBST biologically inactive. Even without pasteurization, BST and rBST are not recognized by the human body as biologically active substances and do not enter the human bloodstream when ingested. Rather, as with other proteins, they are broken down into their component amino acids, which are digested like the components of any other protein.

22.     FDA determined that rBST is safe for humans and cows when it approved Posilac for sale in 1993. FDA has since reaffirmed that determination on multiple occasions.

23.     For example, in 1994, when Posilac first entered the U.S. market, FDA publicly stated that it had "determined after a thorough review that rBST is safe and effective for dairy cows, that milk from rBST-treated cows is safe for human consumption, and that production and use of the product do not have a significant impact on the environment." 59 Fed. Reg. 6279, 6279-80 (Feb. 10, 1994).

5

24.     FDA reviewed all of the available scientific evidence concerning rBST again in 1999, 2000, 2013 and 2016.  Each time, FDA determined that rBST is safe.

25.     FDA maintains a Product Safety Information webpage concerning rBST.  There, FDA states that it has determined that "milk and meat from cows is safe for humans to eat at any time after the animal is treated with Posilac®" and that "[n]umerous international health and food safety organizations and many national regulatory agencies have confirmed the safety of milk and meat from BST-treated cows for human consumption."  *See* rBST Product Safety Information, available at https://www.fda.gov/animalveterinary/safetyhealth/productsafetyinformation/ucm055435.htm (last visited May 18, 2017).

26.     Other major health organizations and scientific authorities have likewise concluded that rBST is safe, including the World Health Organization (WHO), the National Institutes of Health (NIH), and health agencies in more than 50 countries.

27.     In addition to its scientific findings, FDA has published guidance for the dairy industry regarding rBST-related promotional claims.  The FDA guidance declares that such claims are "false and misleading" if they state or "imply that milk from untreated cows is safer or of a higher quality than milk from [rBST] treated cows."  59 Fed. Reg. at 6280.  FDA has repeatedly reaffirmed, including as recently as 2016, that such claims are false and misleading.

28.     Recognizing that false claims about product safety can be made not only expressly but also by implication, FDA has further warned dairy manufacturers that even a literally truthful statement that "rBST has not been used in the production of the subject milk[] has the potential to be misunderstood by consumers."  *Id.*  Accordingly, if advertisers choose to make such claims, they must take precautions not to state or imply a false safety or quality difference.  At minimum, manufacturers must accompany any promotional claims regarding the

6

use of milk from untreated cows with an affirmative statement that "No significant difference has been shown between milk derived from rBST-treated and non-rBST-treated cows," or by providing reasons other than safety or quality why the manufacturer uses milk from non-rBST-treated cows. *Id.*

29.     The State of Wisconsin also has similarly declared that advertisements are false and misleading if they portray milk or dairy products from untreated cows as safer or of better quality than those derived from herds treated with rBST. Specifically, at the direction of the Wisconsin legislature, the Wisconsin Department of Agriculture, Trade and Consumer Protection ("DATCP") has published regulations that prohibit any person from representing, "directly or by implication," that dairy products "produced with milk from cows treated with [rBST] are of lower quality, or are less safe or less wholesome than other dairy products." Wis. Admin. Code § ATCP 83.02(2)(e). Wisconsin's DATCP regulations also prohibit any person from "directly or by implication" representing that dairy products produced with milk from cows treated with rBST differ significantly in composition from other dairy products. *Id.* § ATCP 83.02(2)(d).

30.     Like the FDA guidance, the Wisconsin regulations require manufacturers who make rBST-related claims to affirmatively disclose that there is no discernable difference in milk from treated and untreated cows. In fact, the Wisconsin regulations go further and mandate that such qualifying statements must be "at least as clear and conspicuous" as the manufacturers' advertising claims regarding the use of milk from untreated cows. Wis. Admin. Code § ATCP 83.02(4)(a)(1). Such disclosures must appear "directly in conjunction with the rBST-free claim, so that there is no written or graphic material separating the rBST-free claim from [it]." *Id.* § ATCP 83.02(4)(a)(2).

7

**rBST Is Not an Ingredient in Dairy Products**

31.     rBST is not an ingredient added to milk or dairy products.

32.     As discussed above, rBST is a supplement given to cows, and to the extent it is present in milk, rBST is present at very low levels comparable to the levels of BST in milk.

33.     Because it is not added to milk, advertising claims that state or imply that rBST is an "ingredient" in milk or dairy products are false.

## ARLA'S FALSE ADVERTISING

34.     In commercial advertising and product labeling, Arla violates federal and Wisconsin law by falsely claiming that rBST is unsafe and dangerous, and that its cheese products are safer and of better quality than cheeses made from milk of cows supplemented with rBST.  In addition, Arla falsely claims that rBST is an ingredient added directly to other cheeses, as opposed to a supplement given to cows.

**Arla's "Live Unprocessed" Advertising Campaign**

35.     On or about April 25, 2017, Arla launched its "first-ever fully integrated U.S. brand campaign" entitled "Live Unprocessed."  Arla's press release announcing the launch of the campaign is attached as **Exhibit 1**.

36.     According to the launch press release, Arla's "$30 million campaign" is part of its "rapid and bold expansion into the U.S. grocery retail dairy" and "comes at a tipping point of Americans' increasingly voracious desire to know more about the products they're eating and feeding their families."  The campaign, which is designed to be "disruptive" and to "resonate with today's 'ingredient savvy' consumer," features "a television buy across 20+ national cable networks," "broadcast and video on demand," as well as "custom content integrations with top publishers and celebrity influencers[.]"  *Id.* at 1-2.  Arla's campaign also

8

includes "print, digital, social, public relations, consumer promotions and retail support." *Id.* at 2.

### *Arla's "rBST" Commercial*

37.     The centerpiece of Arla's "Live Unprocessed" campaign is a series of television commercials in which children were asked to explain "what—or who—they thought rBST, xanthan and sorbic acid were." *Id.* at 1.  The children were not told that these are "ingredients" often "found in sliced and cream cheeses." *Id.*

38.     Because Arla did not provide any relevant information, the children were left to guess at what these "ingredients" were.  Based on the sound of their names and nothing more, at least some of the children mistakenly assumed that the "ingredients" are dangerous and unsafe.  Arla then hand-picked specific children and paired them with cartoon animators "who brought their fantastical stories" to life as television commercials. *Id.*

39.     One of Arla's television commercials is entitled "rBST."  Storyboards of the "rBST" commercial are attached as **Exhibit 2**.  The video is also presently available at multiple sites on the internet, including on YouTube at https://www.youtube.com/watch?v=sDrXF59Z1kw (last accessed May 18, 2017), on iSpot at https://www.ispot.tv/ad/w7SN/arla-cheese-rBST (last accessed May 18, 2017), and on AdForum at http://www.adforum.com/creative-work/ad/player/34544432/arla-cheese-rBST/arla-foods (last accessed May 18, 2017).

40.     The "rBST" commercial is narrated by a girl identified as "LEAH, AGE 7."  It opens with a screen that says, "ARLA CHEESE ASKED KIDS:  What is rBST?"



41.     As ominous music plays in the background, Leah answers that rBST is a huge monster that "has razor sharp horns" and is "so tall it can eat clouds."  Meanwhile, an animated "rBST" monster, replete with horns, fangs, and six eyes, rises up from dark water.



42.     As Leah goes on to explain that the monster's "fur is electric," the "rBST" creature electrocutes a man who attempts to touch it.  The monster snickers as Leah reports that the monster "starts laughing."

10



43.     The dark scene and background music then change to a sun-filled living room, where Leah is cheerfully drawing a picture. An adult narrator informs viewers that "Actually rBST is an artificial growth hormone given to some cows, but not the cows that make Arla cheese. No added hormones. No weird stuff."

44.     Just then, the following tiny disclaimer, not legible to the ordinary viewer, briefly appears at the bottom of the screen: "Made with milk from cows not treated with rBST. No significant difference has been shown between milk derived from rBST-treated cows and non-rBST-treated cows."

45.     In the final frames of the commercial, the phrases "No added hormones" and "No weird stuff" are prominently displayed on screen, while Leah happily eats a sandwich made with Arla cheese.



11

46. Arla's portrayal of rBST as a deadly monster is blatantly, and egregiously, false. rBST is not dangerous and is not something consumers should fear. The fact that the commercial is told from the perspective of a child does not change the core message of the ad: rBST is dangerous and unsafe.

47. FDA has determined based on an exhaustive review of the scientific evidence that rBST is safe, and that advertisements that state or imply otherwise are false. The State of Wisconsin has made the same determinations.

48. Arla's claim that rBST is "weird stuff" is also false. Insofar as it is present in the milk of treated cows, rBST occurs at the same low levels as the natural hormone BST, and rBST is indistinguishable from BST in milk. As a result, FDA and the State of Wisconsin have determined that there is no discernable difference between milk from rBST-treated and untreated cows.

49. Arla's small-print disclaimer, which acknowledges that there is no demonstrated difference between milk from rBST-treated and untreated cows, directly contradicts the commercial's message that rBST is unsafe, "weird," and should be avoided. In any event, the disclaimer is so obscure that the overwhelming majority of consumers would not notice it, and it does not alter the commercial's meaning in any event.

### *Internet Advertising*

50. In addition to broadcast and cable television, Arla is disseminating the "rBST" commercial via its website, Twitter, Facebook, Instagram, YouTube, and through other social media. On all of these platforms, Arla accompanies the "rBST" commercial with other false claims about rBST.

12

*Arla's Website*

51.     Arla has a webpage dedicated to the "Live Unprocessed" campaign.  The webpage is available at https://www.arlausa.com/liveunprocessed/ (last visited May 18, 2017).  Selected screenshots of the webpage are attached as **Exhibit 3.**

52.     Arla's "Live Unprocessed" webpage falsely portrays rBST as unsafe.  In addition to featuring the "rBST" television commercial, Arla claims on the "Live Unprocessed" webpage that, unlike other dairy companies that use milk from cows that are supplemented with hormones such as rBST, "Arla provides dairy products that *you can feel good about eating and serving to your friends and family*."  *Id.* at 13 (emphasis added).  The false and necessary implication of this claim is that consumers *should not* "feel good about eating" or "serving [their] friends and family" cheese made from the milk of rBST-treated cows.

53.     Arla's "Live Unprocessed" webpage also repeats the false claims that rBST is "weird stuff," that Arla's products are of better quality because they are made from the milk of cows not treated with rBST, and that rBST is an ingredient in some cheese.

54.     For example, the webpage states, "We've been making cheese the simple, honest way for over 100 years.  Ingredients you can pronounce.  Happy, healthy cows.  No weird stuff."  *Id.* at 2.  Hovering a mouse over an icon next to the phrase "*No weird stuff*" triggers a pop-up screen that reads:

> No artificial additives.  No ingredients that you can't pronounce.  *No ingredients that sound confusing* or in any way like a made-up word.  No ingredients with names that sound like they may be aliens with nine arms, *beasts with electric fur*, gigantic robots or bears in disguise.  *No artificial growth hormones like rBST*\*. . . .  Nor anything else artificial, because our cheese has always been made with simple ingredients and never anything weird.

*Id.* at 3 (emphases added).

13

55.     Arla further states on its webpage, "100% cheese; *0% weird stuff*. . . . ***No added hormones.\*  No weird stuff.***  Just simple honest ingredients you can pronounce."  *Id.* at 7 (emphasis added).

56.     Claims such as "No added hormones\*" and "completely free of added hormones\*" are repeated on the "Live Unprocessed" webpage in connection with Arla cheese slices, cream cheese, and snack cheese.  *Id.* at 8-10.  Similar claims appear on other pages of Arla's website devoted to these products.  Selected screenshots of the product-specific pages of Arla's website are attached as **Exhibit 4**.

57.     The asterisks (\*) accompanying Arla's claims regarding "No added hormones" refer to a disclaimer that appears in tiny font at the very bottom of some (but not all) of the webpages on which these claims appear.  The disclaimer reads:  "No significant difference has been shown between milk derived from rBST-treated and non-rBST treated cows."  Ex. 3 at 13.

58.     This disclaimer is unlikely to be noticed or read by most consumers.  Even for those who do read it, the disclaimer does not dispel or excuse Arla's false claims about rBST that are prominently displayed on website.

*Arla's Twitter Feed*

59.     Arla maintains a Twitter account that is available at https://twitter.com/ArlaFoodsUS (last visited May 18, 2017).

60.     On or about April 19, 2017, Arla tweeted a "teaser" advertisement for the "rBST" television commercial.  A screenshot of Arla's Twitter post is attached as **Exhibit 5**.

61.     The tweet falsely portrays rBST as scary and unsafe.  The text states, "We asked kids:  What's rBST?" Below the text is an alarming graphic depicting the phrase, "IT HAS RAZOR SHARP HORNS."  *Id.* at 3.

14



*Arla's Facebook Page*

62.     Arla maintains a Facebook page that is available at

https://www.facebook.com/ArlaUSA (last visited May 18, 2017).

63.     On or about April 25, 2017, Arla posted the "rBST" commercial to its

Facebook page. Selected screenshots of Arla's Facebook page are attached as **Exhibit 6**.

64.     The false claims in the "rBST" commercial are repeated in Arla's

Facebook post, which reads, "We asked kids: What is rBST? Whatever it is, it's not found in

Arla cheese. No artificial hormones.* No weird stuff. #LiveUnprocessed." *Id.* at 1.



65. Notably, the asterisk (*) that accompanies the "No artificial hormones" claim on Arla's Facebook page does not correspond to any disclaimer.

*Arla's Instagram*

66. Arla maintains an Instagram account that is available at

https://www.instagram.com/arlausa (last visited May 18, 2017).

67. Arla has posted multiple links to its "rBST" commercial on Instagram. A screenshot of Arla's Instagram account showing these links is attached as **Exhibit 7**.

68. Arla's Instagram posts falsely claim that dairy products made using milk from cows treated with rBST are unsafe or of lower quality, and that rBST is "weird stuff" used as an ingredient in other dairy products. *Id.* at 3.

16



***Arla's YouTube Channel***

69.     Arla maintains a YouTube channel that is available at

https://www.youtube.com/user/ArlaUSA (last visited May 18, 2017).

70.     Arla has posted its "rBST" television commercial to its YouTube channel.

Screenshots of Arla's YouTube channel are attached as **Exhibit 8**.

71.     In text that accompanies the commercial, Arla falsely claims that rBST is

a "weird ingredient" found in other cheese:  "Arla Cheese only uses ingredients you'd recognize,

unlike some companies that use weird ingredients most people don't even know."  *Id.* at 1.

***Arla's Social Media Activities***

72.     Arla has paid spokespeople and "bloggers" to further disseminate its false

claims regarding rBST.

73.     In addition to driving traffic to Arla's "Live Unprocessed" webpage, these

bloggers have repeated Arla's false claims, including the claim that rBST is an ingredient found

in other cheese.  Screenshots of some Arla-sponsored social media posts are attached as **Exhibit**

**9**.

17

74.     For example, on or about April 27, 2017, one of Arla's sponsored bloggers asked on social media, "What ingredients are really ***inside*** your cheese slices?"  *Id.* at 1 (emphasis added).



75.     Another blogger sponsored by Arla falsely portrayed rBST as an ingredient "***in your food***."  *Id.* at 2 (emphasis added).



76.     In yet another Arla-sponsored post, a blogger writes, "***So, what's in your cheese?***" and states that Arla's ad campaign was designed "to see if kids understood some ***ingredients*** commonly found in dairy products."  She reports that when "asked to draw their interpretations of Xanthan, rBST*, and Sorbic Acid . . . [t]he kids (understandably) drew vivid representations of ***the ingredients, often imagining them as monsters, bad guys, or icky chemicals***."  *Id.* at 3 (emphases added).

77.     Arla's social media posts necessarily imply that dairy products made from milk of rBST-treated cows are unsafe, different, and/or of lower quality than Arla's products.

**Arla's Intent To Mislead**

78.     Arla's false claims regarding rBST are made with knowing disregard for the truth and a deliberate intent to mislead.

79.     In its public statements, Arla has acknowledged that when it asked children to describe rBST, Arla did so knowing the children would be incapable of accurately

answering the question.  For example, on its "Live Unprocessed" website, Arla concedes that "We asked kids:  What's rBST?" but ***Of course, they had no idea***."  Ex. 3 at 4-5 (emphasis added).

80.     In other words, Arla knowingly exploited children's lack of understanding to generate claims and messages about rBST that it knew would be inaccurate.  Arla then "took their answers and brought them to life" for its own financial gain.  Ex. 1 at 1.

81.     Moreover, in selecting "Leah, age 7" as the inspiration for the "rBST" commercial, Arla intended to communicate the false message that rBST is unsafe.  This is evident from a "Behind the Scenes" video that Arla has posted to its YouTube channel.  A storyboard of the "Behind the Scenes" video is attached as **Exhibit 10**.  In addition, the video is currently available on YouTube at https://www.youtube.com/watch?v=N_eoubg5xFw (last accessed May 18, 2017), and on Vimeo at https://vimeo.com/214721538 (last accessed May 18, 2017).

82.     In the video, employees of Arla's advertising agency are shown talking to various children, including Leah, about rBST.  Several kids are asked, "rBST:  Do you know what that is?"  They all respond, "No."

83.     Despite their lack of understanding, Arla's ad agency encouraged the children to describe rBST, and it did so for the express purpose of illustrating to consumers how other cheese supposedly is made.  As a Director of Arla's ad agency explains in the video, "What if kids told us what these weird sounding things were?  . . . And then we take their stories and bring them to live ***to show people how some cheese is made***."

84.     Arla chose Leah because its ad agency "ended up getting this amazing … story from Leah that was something we never could have dreamed up."  Leah is shown in the

behind-the-scenes video directing the agency on how to draw the rBST monster and scary environment in which it lives. At one point, Leah explains that her intent is to show that the monster is "***very dangerous***." Arla had the same intent when it chose to bring Leah's story to life for its own commercial purposes.

85. Arla's deceptive intent is further evidenced by how Arla has responded to the numerous complaints it has already received about its "Live Unprocessed" campaign. Even when told by members of the public that its claims regarding rBST are false and misleading, Arla has continued its advertising unabated.

86. For example, on April 25, 2017, the very first day of the "Live Unprocessed" campaign, a consumer complained to Arla on Facebook: "You've lost a potential future customer with this ridiculous marketing campaign. Science backs the use of rBST. And, 'no weird stuff'? What does that even mean?" Ex. 6 at 6.

87. Another consumer contacted Arla that same day to say that "fear mongering is easy." The consumer implored Arla to "Stop this anti-science nonsense, please. You're feeding into the problem." *Id.* at 3.

88. Yet another consumer wrote to Arla that day, observing that "rBST doesn't actually show up in the milk anyway, and even if it did, it is indistinguishable from the naturally occurring BST (Bovine Somatotropin) so essentially [Arla's campaign,] it's all marketing?" *Id.* at 5.

89. Arla has also received complaints about its use of children to generate false claims about rBST.

90. For example, one consumer complained, "So, did you explain to these 'smart kids' that you fear mongered the heck out of that rBST [which] . . . isn't harmful . . .

20

because cows already produce it themselves.  What exactly did you tell them—the truth?  . . .
That's pretty screwed up."  *Id.* at 2.

91.     Another consumer asked, "So because a kid thinks this. . . it matters as to
what it is?  This is why kids don't have jobs and don't work.  Their minds have noooo idea of the
concept [of rBST]."  *Id.* at 8.

92.     Still another consumer told Arla, "I am very disheartened to see the ad for
[rBST] free cheese.  [rBST] is naturally occurring and has a time and a place within the
industry."  This consumer noted that rBST "has been proven safe time, time, and time again" so
there is no "need to promote the fear mongering with your latest commercial. . . .  You should be
ashamed and I would expect (and your patrons should demand) truthful, legit, quality advertising
in the future . . . not more mislabeling and false claims through invalid cartoon characters and
glorified patronizing of kids."  *Id.* at 10.

93.     In response to these consumer complaints, Arla has not withdrawn or
corrected any of its false claims regarding rBST.  To the contrary, Arla has posted responses to
Facebook that contain promotional claims for Arla cheese and make further false claims
regarding rBST.  For example, in response to one consumer, Arla wrote that "we just choose not
to put [rBST] ***in our products***," which only underscores the false claim that rBST is an
ingredient found in some cheese.  *Id.* at 5 (emphasis added).

94.     Arla also has sought to justify its false claims by citing the fantasies of the
children it has enlisted.   For example, in response to one consumer complaint, Arla asserted that
the "drawings and descriptions in our campaign are the actual, original work of the kids from our
casting sessions."  Arla went on to protest that all it had done was to ask the kids, "Who or what
is rBST?"  *Id.* at 2.

21

95.     In another consumer response, Arla asserted that it had merely "asked some smart kids what their take was on the strange words found on other labels, and they came up with some pretty imaginative answers, didn't they?"  *Id.* at 8.

**Arla's Unlawful "No Added Hormones" Labeling**

96.     Even prior to its launch of the "Live Unprocessed" campaign, Arla had used the labeling of its products to make false claims regarding rBST.

97.     Arla sells five varieties of sliced cheeses, Havarti, Gouda, Fontina, Muenster, and Medium Cheddar, and three varieties of snack cheese, Havarti, Gouda, and Medium Cheddar.  The front labels for these products prominently display the claim: "NO ADDED HORMONES* ARTIFICIAL FLAVORS OR PRESERVATIVES."



Copies of Arla's product labels are attached as **Exhibit 11**.

98.     The "No Added Hormones*" claims on the front labels of Arla's sliced and snack cheese products refer to the fact that Arla uses milk from cows not treated with rBST. These claims necessarily imply that rBST is an ingredient added to some other cheeses, and that Arla cheese is of superior quality to cheese made using milk from cows treated with rBST. Moreover, while there is an asterisk (*) that accompanies these claims, there is no corresponding text on the front labels that attempt to dispel their false meaning.

22

99. The back labels of Arla's sliced and snack cheese products feature an "About Us" section. There, Arla states that "we deliver *wholesome*, natural cheese" because "[w]e pride ourselves in the fact that our products do not contain any added hormones*, artificial flavors or preservatives." *Id.* at 3, 14. These claims necessarily imply that Arla's cheese is better quality and more wholesome than cheese made using milk from cows treated with rBST.

100. On the back labels of its sliced and snack cheese products, Arla includes disclaimers stating that there is no significant difference in milk from rBST-treated and untreated cows. *Id.* at 2, 14. The disclaimers, however, appear in tiny font below the Nutrition Facts panel, where consumers are unlikely to notice or read them. The disclaimers do not dispel the false messages regarding dairy products made with milk from rBST-treated cows that prominently appear on Arla's front and back labels.

101. Arla also makes false and misleading "No added hormones*" claims on the labeling of several flavors of cream cheese, as well as on the labeling of cheese products that Arla sells under other brand names, such as Dofino®. *Id.* at 15, 17.

102. Arla's "Live Unprocessed" advertising campaign brings heightened attention to the rBST-related claims on Arla's product labels and casts them in a new light. When viewed in light of this extensive advertising campaign, Arla's product labeling perpetuates the false claims that rBST is unsafe, that dairy products made using milk from rBST-treated cows is compositionally different and of inferior quality compared to dairy products made from milk of untreated cows, and that rBST is actually an ingredient in some dairy products.

Case 1:17-cv-00703-WCG   Filed 05/22/17   Page 23 of 29   Document 10

**Irreparable Injury to Elanco**

103.     As the maker of Posilac, the only FDA-approved BST supplement sold in the United States, Elanco has been injured by Arla's false advertising, and is likely to continue suffering irreparable injury until Arla's false advertising is stopped.

104.     Arla's false advertising is damaging Elanco's goodwill and business in ways that cannot readily be quantified or recaptured.

105.     Upon information and belief, rBST-supplemented cows provide milk used for as much as 50% of cheese produced in the United States.  Because Arla has polluted the marketplace with false claims regarding rBST and dairy products made from milk of rBST-treated cows, manufacturers of dairy products, and dairies in turn, may discontinue the use of rBST in order to remain competitive.  Elanco may never recapture these customers without significant investment or significant effort to correct the false impressions about rBST that Arla has created in the minds of consumers.

106.     Upon information and belief, at least one major U.S. dairy manufacturer has already decided, as a result of Arla's advertising campaign, to significantly reduce its purchases of milk from cows treated with rBST.  Companies that supply milk to this manufacturer have notified dairies that they will no longer be accepting milk from cows treated with rBST.

107.     Elanco has a strong commercial interest in preventing the further dissemination of Arla's false advertising.

108.     Elanco has no adequate remedy at law.

# COUNT I

## False Advertising in Violation of the Lanham Act

109.    Elanco realleges and incorporates by reference paragraphs 1 through 108 above.

110.    By reason of the foregoing, Arla has violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

111.    The Lanham Act provides that:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

112.    Arla has made false and misleading representations of fact in advertising and labeling for its products concerning rBST and dairy products made using milk from rBST-treated cows.

113.    Arla has made these false and misleading claims in interstate commerce.

114.    Arla's false and misleading claims are material because they concern an inherent characteristic or quality of rBST and dairy products made using milk from rBST-treated cows.  Such claims are likely to influence consumers' purchasing decisions.

115.    Elanco has been and is likely to continue to be injured as a result of Arla's false advertising.

25

## COUNT II

### Violation of Wisconsin Statute § 100.20

116. Elanco realleges and incorporates by reference paragraphs 1 through 115 above.

117. By reason of the foregoing, Arla has engaged in unfair methods of competition and unfair trade practices in violation of Wisconsin Statute § 100.20(1).

118. Wisconsin Statute § 100.20(1) provides that:

> Methods of competition in business and trade practices in business shall be fair. Unfair methods of competition in business and unfair trade practices in business are hereby prohibited.

119. Arla violated Wisconsin Statute § 100.20(1) by making false and misleading representations in advertising and labeling for its products concerning rBST and dairy products made using milk from cows treated with rBST.

120. Arla's false and misleading claims violate Wisconsin Statute § 97.25 concerning the advertising and labeling of dairy products and DATCP regulations codified at Wisconsin Administrative Code § ATCP 83.02 regarding advertising and labeling claims related to rBST. Violations of these statutory and regulatory requirements are privately enforceable under Wisconsin Statute § 100.20(5).

121. Arla's false and misleading claims in advertising and labeling constitute unfair methods of competition and unfair trade practices in business.

122. As a result of these unfair methods of competition and unfair trade practices in business, Elanco has suffered injury and pecuniary loss.

26

## PRAYER FOR RELIEF

WHEREFORE, Elanco demands judgment against Arla as follows:

A.      An order that preliminarily and permanently enjoins Arla, its officers, agents, servants, employees, spokespersons, and all others in active concert or participation with them from:

1.      Disseminating the advertisements attached as Exhibits 1 through 11, and any other substantially similar advertisements;

2.      Claiming, whether directly or by implication, in any advertising or promotional communication, that (a) rBST or Posilac, or dairy products made from milk from cows supplemented with rBST or Posilac, are dangerous or unsafe; (b) dairy products made from milk of cows supplemented with rBST or Posilac are of better quality, more wholesome or compositionally different from other dairy products; (c) rBST or Posilac is an ingredient added to some dairy products or milk; (d) rBST or Posilac is "weird" and/or dairy products made from milk of cows supplemented with rBST or Posilac contain "weird stuff"; or (e) consumers should not feel "good about eating" or "serving to [their] family and friends" dairy products made from milk from cows supplemented with rBST or Posilac.

3.      An order directing Arla to disseminate, in a form to be approved by the Court, advertising designed to correct the false claims made by Arla in its advertising;

4.      An order directing Arla to bring its product labels into compliance with all federal and state law requirements concerning rBST-related claims;

5.      An order pursuant to 15 U.S.C. § 1116(a) directing Arla to file with the Court and serve on Elanco, within 30 days after entry of the injunction, a report, in writing and under oath, setting forth in detail the manner and form in which Arla has complied with the injunction;

27

6.      An award of Elanco's damages attributable to Arla's false advertising, in an amount to be determined at trial;

7.      A declaration that this is an "exceptional case" due to the willful nature of Arla's false advertising, and awarding attorneys' fees and costs to Elanco pursuant to 15 U.S.C. § 1117;

8.      An award of twice the amount of Elanco's pecuniary loss, together with attorneys' fees and costs, pursuant to Wisconsin Statute § 100.20(5);

9.      Such other and further relief as the Court may deem just and proper.


## **DEMAND FOR JURY TRIAL**

Elanco hereby demands a trial by jury in this action on all claims and issues triable before a jury.

Dated:  May 22, 2017

s/Daniel M. Janssen
Daniel M. Janssen
Johanna M. Wilbert
QUARLES & BRADY LLP
411 East Wisconsin Avenue, Suite 2350
Milwaukee, Wisconsin 53202-4497
Telephone: 414-227-5000
E-mail: daniel.janssen@quarles.com
        johanna.wilbert@quarles.com

Steven A. Zalesin (E.D. Wis. admission pending)
Travis J. Tu (E.D. Wis. admission pending)
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
Telephone: 212-336-2000
E-mail: sazalesin@pbwt.com
        tjtu@pbwt.com

*Attorneys for Plaintiffs Eli Lilly and Company and Elanco US Inc.*